James Clive BELCHER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–00–00811–CR, 14–00–00812–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 27, 2002.

Debora L. Perkey, Galveston, for appellants.

B. Warren Goodson, Jr., Galveston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## ABATEMENT ORDER

JOHN S. ANDERSON, Justice.

The issue presented in this appeal is the validity of James Clive Belcher's (appellant) contention his lawyer provided inef-fective assistance for failing to alert the trial court to the proper deadline for ruling on his motion for new trial. For the reasons set forth below, we hold such inaction by counsel so undermined the proper functioning of the adversarial process that the hearing on the motion for new trial cannot be relied upon as having produced a just result. We abate this appeal and remand these causes to the trial court for a new hearing on appellant's motion for new trial.

### I. Factual Background

Appellant filed a motion for new trial alleging, among other things, a juror was improperly permitted to be seated as a member of the jury. Specifically, appellant contends the juror should have been removed because he lied during voir dire, and during a later hearing, about knowing appellant.

During the motion for new trial hearing, the trial court expressed its concern regarding the eligibility of the juror and adverted twice to the deadline for ruling on appellant's motion for new trial, but on both occasions the court's calculation of the deadline was erroneous. Indeed, the trial court sought counsel's assistance in calculating the final date for ruling on the motion. Appellant's counsel, however, remained silent.

I have been counting on my fingers and toes here, and I think *our 75 days are up on August the 2nd* ... I am real troubled regarding the question of [one juror's eligibility], so I am going to look at some law on that.... I think that [the juror's] testimony ... makes me suspicious about his truthfulness ... and that coupled with the fact [trial counsel] already told us in this record that he should have ... stricken [the juror] and then made a mistake in doing so, ... troubles me with the selection process here.... So, I want to look at

some law about this juror. I want to put everybody on notice what I am thinking with regards to briefing, and I would like to see some. *I would welcome others counting the days, but I think our deadline is August the 2nd.* (emphasis added)

The trial court was mistaken as to the correct, final date for issuing a ruling on the motion for new trial. The judgment was signed May 17, 2000, and the seventy-fifth day following that event was July 31, 2000. If the trial court's ruling on a motion for new trial is not ruled on by written order within seventy-five days after imposing sentence, it is overruled by operation of law. Tex.R.App. P. 21.8(c). Here, the final date for the trial court to rule before the motion was automatically overruled was July 31, 2000. The trial court signed an order granting appellant a new trial on August 2, 2000. Because the trial court acted too late on appellant's new trial motion, the motion was overruled by operation of law. Despite the fact that the trial court sought counsel's assistance in calculating the time for ruling on the motion, appellant's counsel remained silent.

On appeal, appellant asserts in his first point of error that he was denied effective assistance of counsel because counsel failed to correct the trial court when it miscalculated the time period for ruling on appellant's motion for new trial.

## II. Standard of Review

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. Art. I, § 10. The right to counsel necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The United States Supreme Court has established a two-prong test to determine whether counsel is ineffective. *Id.* First, appellant must demonstrate counsel's performance was deficient and not reasonably effective. *Id.* at 688–92, 104 S.Ct. 2052. Second, appellant must demonstrate the deficient performance prejudiced the defense. *Id.* at 693, 104 S.Ct. 2052. Essentially, appellant must show his counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.; Valencia v. State,* 946 S.W.2d 81, 83 (Tex.Crim.App. 1997).

Judicial scrutiny of counsel's performance must be highly deferential and we are to indulge the strong presumption counsel was effective. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). We presume counsel's actions and decisions were reasonably professional and that they were motivated by sound trial strategy. *Id.* Moreover, it is appellant's burden to rebut this presumption by a preponderance of the evidence, via evidence illustrating why trial counsel did what he did. *Id.* Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). A breakdown in the adversarial process implicating the Sixth Amendment is not limited to counsel's performance as a whole; specific errors and omissions may be the focus of a claim of ineffective assistance as well. *United States v. Cronic,* 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

If appellant proves his counsel's representation fell below an objective standard

of reasonableness, he still must affirmatively prove prejudice as a result of those acts or omissions. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. The appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. In short, appellant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. *McFarland,* 928 S.W.2d at 500. If appellant fails to make the required showing of either deficient performance or prejudice, his claim fails. *Id.*

### III. Analysis

Texas Rule of Appellate Procedure 21.8(a) provides the trial court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court. TEX.R.APP. P. 21.8(a). Here, appellant's sentence was imposed May 17, 2000. The 75th day after sentence was imposed was July 31, 2000, not August 2, 2000, as the trial court apparently believed. The trial court requested the lawyers' assistance in the calculation of the deadline for ruling on the motion for new trial, reflecting an intent to make a ruling before the expiration of the 75–day period. Notably, a written ruling favorable to appellant was made, but it was two days beyond the deadline for granting a motion for new trial. Accordingly, the motion was overruled by operation of law. TEX.R.APP. P. 21.8(c).

### A. Performance

■ Normally on a direct appeal, as here, it is difficult for appellant to rebut the strong presumption counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. *Id.* Here, however, we have record evidence that appellant's counsel remained silent while the trial court repeatedly stated its misunderstanding as to the final day for ruling on the motion for new trial. Counsel was apparently uninformed as to the deadline under Rule 21.8(a), was ignoring or not closely following the trial court's statements regarding the motion for new trial, or was so preoccupied with other matters as to effectively deny appellant the presence of competent counsel. That a person who happens to be a lawyer is present at trial alongside the accused is not enough to satisfy the constitutional command. *Strickland,* 466 U.S. at 685, 104 S.Ct. 2052. An accused is entitled to be assisted by an attorney who plays the role necessary to ensure that the trial is fair. *Id.* As stated by the Court in *Strickland,* counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Id.* at 688, 104 S.Ct. 2052. We view counsel's silence here as a breach of that duty, inasmuch as counsel's performance was not reasonable considering all of the circumstances. Errors of omission can reflect deficient performance just as fully as errors of commission. Failing to advise the trial court of its error as to the proper deadline does not fall within the wide range of reasonable professional assistance.

To defeat the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson,* 9 S.W.3d at 814. The record on appeal affirmatively demonstrates the trial court was planning to rule on the motion for new trial, miscalculated the proper date, and requested assistance

in calculating the deadline for that ruling. Nevertheless, appellant's counsel failed to speak. Silence at that moment was so inadequate that, in effect, appellant had no assistance of counsel. Regardless of the outcome on the motion for new trial, every competent lawyer would strive to obtain the trial court's ruling rather than the statutory denial (particularly when, as in this case, the trial court has strongly indicated an intent to rule in favor of defense counsel's client). The latter course nullifies the effort made to prepare, file, and schedule a hearing on the new trial motion. Counsel's default cannot be classified as strategy, because it is a strategy of failure, outside the Sixth Amendment's guarantee of "the assistance of counsel for his defense." Whatever the formulation of a standard for determining whether "assistance of counsel" has been provided within the meaning of the Sixth Amendment, what is required in the actual process of decision of claims of ineffective assistance is the following: a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or *inattention* of counsel, behavior falling measurably below that which might be expected from an ordinary fallible lawyer. *Commonwealth v. Saferian*, 366 Mass. 89, 95, 315 N.E.2d 878, 882–83 (1974) (emphasis added). Here, counsel's performance defeats the presumption that "counsel made all significant decisions in the exercise of reasonable professional judgment." *Jackson*, 877 S.W.2d at 771. Appellant has satisfied the performance prong of the *Strickland* test.

**B. Is A Presumption of Prejudice Appropriate?**

■ Before reaching the prejudice prong of the *Strickland* analysis, we will examine counsel's complete lack of activity during the motion for new trial hearing as tantamount to actual or constructive denial of the assistance of counsel at that critical stage of a criminal prosecution. It is well-established that under the Sixth and Fourteenth Amendments, a criminal defendant is entitled to effective assistance of counsel during trial, *Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), during the penalty phase of a capital case, *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052, and at various critical stages of a criminal prosecution where substantial rights of a criminal accused may be affected, *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). *See Williams v. Turpin*, 87 F.3d 1204, 1209 (11th Cir.1996) (holding motion for new trial is critical stage of the proceedings).

■ Similarly, the rule in Texas is "the hearing on a motion for new trial is a critical stage of a criminal proceeding. It is the only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review." *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim.App.1978). Appellant's right to a new trial, a substantial right, was under consideration at that moment. The right to counsel is not a right confined to representation during the trial on the merits. *Mempa*, 389 U.S. at 133, 88 S.Ct. 254.

Both the United States Supreme Court and the Texas Court of Criminal Appeals have acknowledged that with some Sixth Amendment violations, such as the actual or constructive denial of counsel altogether at a critical stage of the criminal proceeding, prejudice is presumed. *Batiste v. State*, 888 S.W.2d 9, 14 (Tex.Crim.App. 1994) (citing *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052). The special value of the right to the assistance of counsel explains why it has long been recognized that the right to counsel is the right to the effective

assistance of counsel. *Cronic,* 466 U.S. at 654, 104 S.Ct. 2039. The Sixth Amendment requires not merely the provision of counsel to the accused, but "assistance," which is for his defense. *Id.* Thus, the core purpose of the counsel guarantee was to assure "assistance" at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor. *Id.* If no actual "assistance" for the accused's defense is provided, then the constitutional guarantee has been violated. *Id.*

For many years the courts have recognized that where defense counsel is present in court with the accused but not providing any assistance to the accused, the accused is denied his Sixth Amendment right to counsel. The Supreme Court in *Cronic* adverted to the analysis in Judge MacKinnon's concurring opinion in *United States v. Decoster* that "[i]n some cases the performance of counsel may be so inadequate that in effect, no assistance of counsel is provided. Clearly in such cases, the defendant's Sixth Amendment right to have 'Assistance of Counsel' is denied." *Cronic,* 466 U.S. at 654 n. 11, 104 S.Ct. 2039 (citing *United States v. Decoster,* 624 F.2d 196, 219 (MacKinnon, J., concurring), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311).

We have noted above the rule in *Trevino,* that the motion for new trial hearing is a critical stage of a criminal prosecution. In *Cronic,* the Supreme Court articulated the rule that denial of counsel at a critical stage of the proceedings mandates reversal. 466 U.S. at 659, 104 S.Ct. 2039. This rule flows from the presumption of prejudice, and thus constitutional error, when counsel was either totally absent or was prevented from assisting the accused during a critical stage of the proceeding. *Id.* at n. 25, 104 S.Ct. 2039. The purpose of the rule is to ensure the fairness and relia-

bility of the trial as a whole through the presence of counsel at each critical stage. *Id.* at 659, 104 S.Ct. 2039. The element of absence of counsel requires an assessment of the facts and realities of the individual case. The Supreme Court has held that the physical presence of counsel does not prevent his "absence" for purposes of the *Cronic* rule. *See Holloway v. Arkansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (stating that mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate is silent on crucial matters). To the contrary, "absence" means simply the defendant was without counsel, either literally or figuratively.

What constitutes the absence of counsel at what was a critical stage of appellant's criminal prosecution depends on an assessment of the facts of each case. The facts here are simply that counsel appeared at, but remained silent during, the hearing on appellant's motion for new trial, despite the trial court's request for assistance in calculating its deadline for issuing a ruling on the motion for new trial. The question presented is, did counsel's performance equate to no counsel at all, and thus counsel not exercising judgment on appellant's behalf, resulting in a presumption of prejudice? The Fifth Circuit's analysis of whether defense counsel's frequent periods of sleep during the guilt stage of trial triggered the presumption of prejudice under the *Cronic* rule—denial of counsel at a critical stage of the proceeding mandates reversal because prejudice is presumed—provides guidance here. *Burdine v. Johnson,* 262 F.3d 336, 349 (5th Cir.2001) (en banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 2347, 153 L.Ed.2d 174 (2002).

In *Burdine,* the record reflected Burdine's counsel repeatedly dozed or slept as the State questioned witnesses and presented evidence supporting its case against

Burdine. 262 F.3d. at 339. The fact findings, made during Burdine's state habeas proceedings, demonstrated his counsel was frequently sleeping, and thus unconscious, as witnesses adverse to Burdine were examined and other evidence against Burdine was introduced. *Id.* at 349. The *Burdine* court applied the well established rule that when a defendant does not have counsel at every critical stage of a criminal proceeding, the reviewing court must presume that such egregious deficiency prejudiced the fairness of the trial. *Id.* at 348. In reaching its conclusion, the court focused on the distinction between the mere presence of counsel, and the Sixth Amendment's requirement of counsel providing effective assistance to the accused during a critical stage of the proceeding.

Unconscious counsel equates to no counsel at all. Unconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of a client. As recognized by the Second Circuit, 'the buried assumption in our *Strickland* cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse. But that is an assumption we cannot make when counsel is unconscious at critical times.' When we have no basis for assuming that counsel exercised judgment on behalf of his client during critical stages of trial, we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice. (internal citations and footnotes omitted)

262 F.3d at 349.

Here, we have a record wherein the trial court is attempting to engage appellant's lawyer in a dialogue on an issue critical to appellant's interests: the court's timely ruling on appellant's motion for new trial. Counsel's silence at this critical stage of the proceeding deprived appellant of the valuable right to a ruling by the trial court on the merits of his motion, rather than the automatic denial he received because his lawyer failed to advise the trial court of the correct date on which the court's power to rule expired. Counsel's failure to speak at this juncture is so egregious that it equates to the absence of counsel, even though counsel was physically present. Applying the *Cronic* rule, we find appellant was denied counsel at a critical stage of his criminal proceeding, triggering a presumption of prejudice. Without any basis for assuming counsel exercised reasonable professional judgment on behalf of his client during that hearing, there is no basis for trusting the fairness of the trial.

## C. Appellant Has Demonstrated Prejudice

■ We have concluded appellant was constructively denied the assistance of counsel at the motion for new trial hearing. Because it was a critical stage of his criminal proceeding, the *Cronic* rule requires that we presume the deficiency prejudiced the fairness of the hearing. Even if prejudice were not presumed under the circumstances presented here, the outcome would be the same inasmuch as appellant has demonstrated prejudice, satisfying the second, or "but for," prong of the *Strickland* test for ineffective assistance of counsel.

To demonstrate prejudice resulting from deficient performance of counsel, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson,* 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The result achieved in this proceeding—denial of a new trial by operation of law—is not reliable inasmuch as the trial court ultimately granted a new trial, but two days late. This result is irreversi-

bly tainted by the failure of appellant's counsel, present at the motion for new trial hearing, to prompt the trial court with the correct date on or before which the court was required to rule in order to avoid automatic denial of the motion. Counsel's failure to respond to the trial court's request for confirmation of the correct date for the ruling deprived appellant of the judge's ruling as opposed to the statutory default of denial.

Here, appellant is required to prove a motion for new trial would have been granted in order to satisfy the second prong of *Strickland. See Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998) (holding appellant is required to prove motion to suppress would have been granted to show prejudice). That showing has been made because the record on appeal contains the trial court's order vacating the judgment and granting appellant a new trial. Regardless of the status of that order, it unequivocally demonstrates the trial court's intent to reach that result. Counsel's failure to advise the trial court of the correct deadline for ruling on the motion for new trial prejudiced appellant in that such advice would have prompted the trial court to issue a timely ruling. There is, therefore, a direct nexus between counsel's deficient performance and prejudice to appellant. Whether prejudice is presumed or proved, we sustain appellant's first point of error.[1]

## IV. Remedy

■ Sixth Amendment violations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation. *United States v. Morrison,* 449 U.S. 361, 364, 101

S.Ct. 665, 66 L.Ed.2d 564 (1981). The error in these causes did not contribute to appellant's convictions or punishment; therefore, reversal of the trial court's judgment is not required. *See* Tex.R.App. P. 44.2(a). The appropriate remedy is to abate the appeals and remand the causes to the trial court for a new hearing on appellant's motion for new trial. *See Massingill v. State,* 8 S.W.3d 733, 738 (Tex. App.-Austin 1999, no pet.) (abating appeal to permit hearing on appellant's untimely motion for new trial asserting reasonable grounds entitling appellant to hearing had they been timely). Abatement of this appeal is authorized by our authority to remedy the constitutional violation shown by the record. *See Oldham v. State,* 977 S.W.2d 354, 360 (Tex.Crim.App.1998) (stating denial of constitutionally guaranteed counsel will be remedied).

By this order, these appeals are abated and the causes remanded to the trial court for a new hearing on appellant's motion for new trial. If the trial court grants the motions, appellant's appeals will be dismissed.[2] If the motions are overruled, the record will be supplemented and the parties will be permitted to brief any issues relating to the overruling of the motions. The trial court is ordered to conduct a hearing on the motion for new trial. Any ruling is to be included in a supplemental clerk's record and transmitted to this Court.

The appeal is abated, treated as a closed case, and removed from this Court's active docket. The appeal will be reinstated on this Court's active docket only when the supplemental clerk's record is filed in this Court. The Court will consider an appro-

---

1. Based on our disposition of appellant's first point of error, we need not reach his remaining issues on appeal. *See* Tex.R.App. P. 47.1.

2. Appeal by the State from orders granting new trials would be separate proceedings. *See* Tex.Code Crim. Proc. Ann. Art. 44.01(a)(3) (Vernon Supp.2002)

priate motion to reinstate the appeal filed by either party, or the Court may reinstate the appeal on its own motion. It is appellant's responsibility to request a hearing date from the trial court and to schedule a hearing in compliance with this Court's order. If the parties do not request a hearing, the court coordinator of the trial court shall set a hearing date and notify the parties of such date.

It is so ORDERED.

FROST, J. concurs.

BRISTER, C.J. dissents.

KEM THOMPSON FROST, Justice, concurring.

At a hearing on appellant's motion for new trial, the trial court noted its concern about an issue raised by the motion and requested additional briefing from counsel. Apparently, the trial court intended to study the issue more before ruling. The trial court then announced an incorrect deadline for ruling on the motion—a date that was past the expiration of the court's jurisdiction. Although the trial court stated that it would welcome assistance in calculating the deadline, appellant's counsel failed to bring the miscalculation to the trial court's attention. Later, the trial court tried to grant appellant the requested relief by signing an order for a new trial. The order, however, came two days late, at a time when the court's jurisdiction had expired.

Our task on appeal is to determine (1) if appellant received ineffective assistance of counsel because his trial attorney failed to correct the trial court's miscalculation of the deadline for granting a new trial; and, (2) if so, whether appellant suffered prejudice as a result of the error. *See Strickland v. Washington,* 466 U.S. 668, 687–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);

*Hernandez v. State,* 726 S.W.2d 53, 55–57 (Tex.Crim.App.1986).

The first prong of the analysis turns on whether defense counsel has a duty to correct a court's stated misunderstanding of the critical deadline for granting a motion for new trial. The dissent asserts "no court has ever ruled that attorneys have a duty to tell the court when to rule," but that is not exactly what happened here. This is not a case in which the lawyer merely failed to chart out the deadlines for the court's convenience or information; rather, the trial court made its mistaken belief manifest, affirmatively identifying an erroneous deadline. Verifying the deadline the court identified would have been a simple arithmetic exercise. Appellant's counsel, however, did not respond to the court's invitation to assist in calculating the deadline, nor did appellant's counsel correct the trial court or inform the court of the true deadline. Instead, appellant's counsel allowed the court to labor under a misunderstanding of the facts.

A lawyer has an affirmative duty to correct the court's mistaken belief on crucial facts. *See, e.g., Burley v. Cabana,* 818 F.2d 414, 417–18 (5th Cir.1987) (holding appellant's counsel was ineffective under *Strickland* because counsel failed to correct trial court's erroneous statement that it believed a life sentence was mandatory). Though no court appears to have confronted the precise facts presented by our record, in *Crowell v. State,* 949 S.W.2d 37, 38 (Tex.App.-San Antonio 1997, no pet.), the Fourth Court of Appeals faced a similar situation. In *Crowell,* the appellant's lawyer failed to bring to the trial court's attention the fact that the hearing on appellant's motion for new trial fell on a date that came after the court's jurisdiction would expire. The *Crowell* court held that "the burden of ensuring that the hearing [on a motion for new trial] is set for a date

within the trial court's jurisdiction is properly placed on the party presenting the motion." *Id.* Thus, it follows that the burden is on appellant, as movant for a new trial, to ensure that any manifest mistake by the trial court in calculating the deadline for ruling is brought to the trial court's attention.

Absent evidence of counsel's reasons for the challenged conduct, we indulge a strong presumption that it falls within the wide range of reasonable, professional assistance, *i.e.*, that the challenged action might be considered sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Even though the record contains no testimony as to the reasons for appellant's counsel's actions, the presumption is overcome in this case because no strategic motivation for the conduct can be imagined. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001) (noting that appellate courts commonly will assume a strategic motivation if any can possibly be imagined); *Lawson v. State*, 896 S.W.2d 828, 830–33 (Tex.App.-Corpus Christi 1995, pet. ref'd) (holding counsel was ineffective where there was no conceivable trial strategy to explain counsel's conduct). It is inconceivable that any defense lawyer, as a matter of strategy, would fail to correct the court's stated miscalculation of the days left to rule, particularly when a new trial hung in the balance. Appellant's counsel, while obviously effective in terms of persuading the trial court to grant appellant a new trial, was ineffective in failing to correct the trial court's mistaken belief as to the deadline for ruling. *See Burley*, 818 F.2d at 417–18. Under the circumstances presented by this record, once the trial court made its mistaken belief manifest, it was incumbent upon appellant's counsel to inform the court of the error so that the court could take timely action. *See id.* The failure to do so constitutes ineffective assistance of counsel.

The second, prejudice prong of *Strickland* is also satisfied. As a result of the uncorrected miscalculation, the trial court's order granting the new trial did not have its intended effect, and appellant lost the benefit of the new trial he surely would have had if only the trial court's order had been timely. The dissent misses the mark in arguing that the court should refuse to consider the belated order granting a new trial in assessing prejudice. Though the dissent correctly characterizes the belated order as a legal nullity, it is not invisible for purposes of evaluating appellant's ineffective-assistance claim. Because the order is part of the record on appeal, the appellate court may consider it—not to show that appellant received a new trial (indeed, he did not), but to show what the trial court would have done had it been clothed with the jurisdiction to act. Here, the harm that resulted from counsel's failure to correct the court's manifest misunderstanding can hardly be questioned. The new trial the court intended to grant to appellant was lost with the trial court's jurisdiction. That loss constitutes prejudice under the second prong of *Strickland*. *See Strickland*, 466 U.S. at 691–95, 104 S.Ct. 2052; *Hernandez*, 726 S.W.2d at 55–59.

Because appellant has satisfied both prongs of *Strickland*, he is entitled to relief. *See Strickland*, 466 U.S. at 687–92, 104 S.Ct. 2052; *Hernandez*, 726 S.W.2d at 55–57. For this reason, I respectfully concur in the result.

SCOTT BRISTER, Chief Justice, dissenting.

In this appeal, appellant Jimmy Belcher once again demonstrates a remarkable ability to prolong a chase. After hijacking a truck by threatening to shoot the driver,

appellant forced the driver to take him for a ride, and eventually forced him from the truck. The driver called 9–1–1, and a patrol officer spotted the truck and followed appellant to a residential driveway. When the officer attempted to arrest appellant, he jumped back into the truck, sped around the back of the house, and headed out another way. A high-speed chase ensued, ending only when the truck flew off an embankment and into the San Jacinto River. Not one to give up easily, appellant escaped from the truck, and was arrested only after a search involving sixty officers and a police helicopter found him hiding underneath a partially sunken shrimp boat.

At trial, appellant was convicted of aggravated kidnaping and aggravated robbery, and the trial court assessed concurrent thirty-year sentences. Appellant's appointed counsel filed a timely motion for new trial, obtained a timely hearing, and ably presented appellant's arguments. At the close of that hearing the trial judge stated:

> I have been counting on my fingers and toes here, and I think our 75 days are up on August the 2nd.... I am real troubled regarding the question of [one juror's eligibility], so I am going to look at some law on that.... So, I want to look at some law about this juror. I want to put everybody on notice what I am thinking with regards to briefing, and I would like to see some. I would welcome others counting the days, but I think our deadline is August the 2nd.

Having the advantage of more fingers and toes, a panel of this Court held the motion for new trial was overruled by operation of law on July 31st, and vacated the trial court's order. *See* Tex.R.App. P. 21.8(c); *State v. Belcher*, Nos. 14–00–01197–CR & 14–00–01198–CR, 2001 WL 306181 (Tex.App.-Houston [14th Dist.]

Mar. 29, 2001, pet. ref'd) (not designated for publication).

Undeterred, appellant returns to our court, this time asserting ineffective assistance of counsel. Although last year we held his motion for new trial was overruled by operation of law, by granting a new hearing the court now holds it is not. Because the law does not require us to prolong this chase any further, I respectfully dissent.

### Ineffective Assistance of Counsel

The Court grants appellant a second hearing on his new trial motion, finding his appellate counsel ineffective in failing to correct the trial court's miscalculation of dates. The concern in ineffective assistance cases is whether there has been a breakdown in the adversary process that renders appellant's conviction unreliable. *See Bell v. Cone*, 535 U.S. 685, ——, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). For several reasons, I do not believe that is so.

First, any mistake in calculating the new trial deadline was made by the judge, not appellant's counsel. Counsel cannot be ineffective for failing to take actions she had no duty to take. *See Ex parte Morrow*, 952 S.W.2d 530, 536–37 (Tex.Crim.App. 1997) (holding counsel not ineffective as he had no duty to advise defendant of collateral consequences of guilty plea). A defense attorney may have a duty to *file* a motion for new trial, *see Bryant v. State*, 974 S.W.2d 395, 400 (Tex.App.-San Antonio 1998, pet. ref'd) (holding record did not show failure to file motion for new trial meant counsel was ineffective), or to ensure it is timely *heard*, *see Bacey v. State*, 990 S.W.2d 319, 333 (Tex.App.-Texarkana 1999, no pet.). But no court has ever held that attorneys have a duty to tell the court when to rule. Indeed, counsel cannot require the trial court to rule at all, as

motions for new trial may be overruled by operation of law. *See* Tex.R.App. P. 21.8.[3]

Second, the objectively-reasonable counsel standard includes an element of foreseeability—we cannot fault counsel for failing to foresee the unforeseeable. *See, e.g., Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (holding counsel not ineffective for failing to foresee change in law); *Lyon v. State*, 885 S.W.2d 506, 521 (Tex.App.-El Paso 1994, pet. ref'd) (rejecting ineffectiveness claim when counsel could not have anticipated rebuttal testimony). At the moment when all attorneys were invited to confirm the jurisdictional deadlines, the trial judge had only indicated she wanted more briefing, not that she intended to grant a new trial.[4] Appellant's argument requires us to assume his counsel should have known that (1) the motion would be granted, and (2) the deadline would not be checked and corrected by anyone (trial judge, court coordinator, or court clerk) or anything (calendar or docketing system) at the courthouse.

Third, this is not a case about a sleeping lawyer. Though all concerned might have been more careful with their math, none were unconscious or totally absent. If we presume prejudice every time we think (in hindsight) a lawyer should have spoken up, we will have to presume a lot.

Finally, appellant must also show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). As discussed below, I do not believe he has made such a showing. We vacated the trial court's belated order and declared it a "nullity." *Belcher*, 2001 WL 306181 at *2. A void order has no legal effect; it cannot affect, impair, or create legal rights. *See Ex Parte Seidel*, 39 S.W.3d 221, 225 (Tex.Crim.App.2001); *Zaragosa v. State*, 588 S.W.2d 322, 327 (Tex.Crim.App.1979) (treating void order granting a new trial as if it had never been ordered). By relying on that order to establish prejudice, the court has given this "nullity" a decisive effect.

A fair assessment of counsel's performance requires us "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. Here, appellant's counsel timely filed a motion for new trial, timely presented evidence at a hearing, and put the trial court on actual notice of her desire for a ruling. *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex.Crim.App.1998) (establishing requirements of movant in motion for new trial). From this perspective, we cannot presume reasonable counsel should have known that trusting the trial court to make a timely ruling would prove fatal to appellant's case.

The error here was made by the judge, not counsel. Trial courts must be aware of their own jurisdictional deadlines; if they are not, that error cannot be blamed on counsel. I would not establish a standard that declares every attorney incompetent when a judge miscalculates a deadline.

---

**3.** As indicated in the quotation from the record, the trial judge invited counsel to confirm her calculation of the new trial deadline, but in no way did she "request assistance" or rely upon them to do so, as the Court suggests in its opinion.

**4.** The Court's conclusion that the judge "strongly indicated an intent to rule in [appellant's] favor" is a lot to read into her comment that she was "real troubled" about a question and wanted more research.

Thus, I would overrule appellant's point one.

### The Juror Appellant Knew

In his second issue, appellant argues he is entitled to a new trial because one of the members of the jury lied about knowing him. When a motion for new trial asserting such a claim is overruled (as it was here by operation of law), we review for an abuse of discretion. *See Gonzales v. State,* 3 S.W.3d 915, 916 (Tex.Crim.App.1999).

As the members of the jury panel assembled for his trial, appellant told his trial counsel he knew one of the jurors. During voir dire, defense counsel asked if anyone knew appellant. The challenged juror did not respond, and no questions of any kind were directed to him on the matter. When neither side struck him, he became the twelfth juror.

While a juror who gives false answers during voir dire may be disqualified, allowing that juror to serve is error only if defense counsel acted diligently, in good faith, with no knowledge of the falsehood. *Id.* at 916–17. The Court of Criminal Appeals has consistently held there is no error in seating a juror if defense counsel fails to ask specific questions rather than broad ones, or fails to ask follow-up questions after uncovering potential bias. *Id.* at 917.

Here, appellant concedes he recognized this juror and told his counsel so, both before voir dire and again when the juror was placed on the jury. The juror was neither questioned nor challenged, nor was the matter brought to the trial court's attention before the remainder of the jury panel was dismissed. Indeed, nothing was said about the matter until the end of the first day of trial, after dismissal of the jury panel, opening statements, and at least an hour of testimony.

Assuming appellant and his counsel were truthful in saying they intended all along to strike this juror (though allegedly "one of his best friends"), they do not get an extra peremptory strike merely by claiming they made a mistake. Nor is appellant entitled to a jury made up only of strangers, a condition that may be impossible in smaller communities. I would hold that the denial of the new trial (by operation of law) was not an abuse of discretion.

### Conclusion

The law says—and this Court affirmed in its prior opinion in this case—that motions for new trial are overruled by operation of law 75 days after sentencing. TEX. R.APP. P. 21.8(c). By declaring an exception for every lawyer who miscounts, the Court makes that deadline infirm. Thus I respectfully dissent.